UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ex rel. **BRIAN D. HOLBROOK,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE BRINK'S COMPANY, et al.,**<br><br>Defendant. | CASE NO. 2:13-cv-00873<br><br>JUDGE ALGENON MARBLEY<br><br>MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| **RELATOR BRIAN D. HOLBROOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT** ||

Relator Brian D. Holbrook respectfully moves this Court for the entry of an order granting Plaintiffs partial summary judgment against Brink's Incorporated for penalties in sum of $5,000 to $10,000 each for filing a total of 11,002 false reports under the False Claims Act (31 U.S.C. §3729(a)(7)) in connection with transactions which Brink's handled involving Jackson Metals. In the alternative, Relator moves for partial summary judgment as to Brink's liability, only, for penalties for filing false reports under the pre-FERA False Claims Act (31 U.S.C. §3729(a)(7)). In support of this motion, Relator relies upon the accompanying Memorandum, Statement of Material Facts (with attached Stipulated Facts), Declaration of David S. Stone and Declaration of Irwin P. Burzynski.

                                                        Respectfully submitted,

                                                        THE CHANDRA LAW FIRM, LLC

                                                        /s/ *Donald Screen*
                                                        Subodh Chandra (OH Bar No. 0069233)
                                                        Donald Screen (OH Bar No. 0044070)
                                                        The Chandra Law Building
                                                        1265 W. 6th St., Suite 400

Cleveland, OH 44113-1326
Phone: 216.578.1700  Fx: 216.578.1800
Subodh.Chandra@chandralaw.com
Donald.Screen@chandralaw.com

David S. Stone, Esq. (*admitted pro hac vice*)
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, New Jersey 07922

*Attorneys for Relator/Plaintiff Brian D. Holbrook*

## CERTIFICATE OF SERVICE

I certify that on October 10, 2017, my office served, via the Court's ECF system, the foregoing document on all counsel of record in this case.

*/s/ Donald Screen*
*One of the attorneys for Relator/Plaintiff Brian D. Holbrook*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. BRIAN D. HOLBROOK, <br><br>Plaintiff, <br><br>v. <br><br>THE BRINK'S COMPANY, et al., <br><br>Defendant. | CASE NO. 2:13-cv-00873 <br><br> JUDGE ALGENON MARBLEY <br><br> MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

RELATOR BRIAN D. HOLBROOK'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

THE CHANDRA LAW FIRM, LLC
Subodh Chandra (OH Bar No. 0069233)
Donald Screen (OH Bar No. 0044070)
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700  Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

STONE & MAGNANINI LLP
David S. Stone, Esq. *(admitted pro hac vice)*
100 Connell Drive, Suite 2200
Berkeley Heights, New Jersey 07922
973-218-1111
973-218-1106 fax
DStone@stonemagnalaw.com

*Attorneys for Plaintiff Brian D. Holbrook*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

I. PRELIMINARY STATEMENT ........................................................................................ 3

II. STATEMENT OF PROCEDURAL HISTORY & STATEMENT OF FACTS ................... 5

    A. General Factual Overview ........................................................................................ 5

    B. Facts Underlying Defendant's Fraudulent Scheme ................................................... 5

    C. Duration and Scope of the Fraudulent Scheme ......................................................... 8

    D. The Court's January 15, 2015 Opinion and Order Denying Brinks' Motion to Dismiss
        10

III. ARGUMENT ................................................................................................................... 10

    A. Plaintiff is Entitled to Summary Judgment ............................................................. 10

    B. Defendant Admitted to Stealing Government Property .......................................... 11

    C. Defendant Is Subject to FCA Penalties for Violating the CTAs, Filing False Reports,
        and Depriving the Government of Valuable Property ............................................ 12

    D. This Court Has Already Found that the Factual Allegations, If Undisputed, Fraudulently
        Deprived the Government of Valuable Resources .................................................. 15

IV. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Emmons v. McLaughlin*,
   874 F.2d 351 (6th Cir. 1989) ........................................................................................ 10

*Street v. J.C. Bradford & Co.*,
   886 F.2d 1472 (6th Cir. 1989) ...................................................................................... 10

*Brady-Morris v. Schilling* (*In re Kenneth Allen Knight Tr.*),
   303 F.3d 671 (6th Cir. 2002) ............................................................................ 10, 11, 12

**Statutes and Other Authorities**

31 U.S.C. § 10 (2012) ........................................................................................................ 12
31 U.S.C. § 29 (2012) ........................................................................................................ 15
31 U.S.C. § 34 (2012) ........................................................................................................ 15
31 U.S.C. § 3729(a)(7) (2012) ....................................................................................... 9, 15
Fed. R. Civ. P. 56(a) ......................................................................................................... 10

2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. BRIAN D. HOLBROOK, <br><br> Plaintiff, <br><br> v. <br><br> THE BRINK'S COMPANY, et al., <br><br> Defendant. | CASE NO. 2:13-cv-00873 <br><br> JUDGE ALGENON MARBLEY <br><br> MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS <br><br> <u>ORAL ARGUMENT REQUESTED</u>[1] |

**RELATOR BRIAN D. HOLBROOK'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. PRELIMINARY STATEMENT

Plaintiff Brian D. Holbrook ("Plaintiff" or "Holbrook") moves for partial summary judgment on both liability and damages against Brink's Incorporated ("Defendant" or "Brink's"). Plaintiff respectfully requests that the Court enter judgment as to liability and penalties, eliminating issues for trial, and assisting the parties engage in settlement discussions.

This case is straightforward: Brink's violated its contract and defrauded the Federal Reserve Banks ("FRB") by extracting valuable resources from government property for its own benefit, while concealing its illicit scheme.

---

[1] As required by Local Civil Rule 7.1 (b)(2) Plaintiff respectfully requests oral argument and provides the following brief statement in support of that request. The facts and legal principles at issue in this case are complex, and may be further clarified through open dialogue after the Court has had an opportunity to review the parties' submissions. Plaintiff suggests that oral argument will allow counsel and the Court to engage in highly relevant, detailed analysis of the issues briefed in this case, and will allow both counsel and the Court a better opportunity to explore the parties' positions.

3

Based on the law of this case established by the Court's January 15, 2015 denial of Defendant's motion to dismiss ("January 15 Opinion"),[2] the relevant facts are not in dispute: Brink's and Jackson Metals entered into a secret agreement in which Brink's provided Jackson Metals with valuable, high-copper-content pennies "high-value pennies," or "HVP") in order that Jackson Metals could mine the copper in those coins. In exchange, Jackson Metals paid Brink's and delivered less valuable, less copper-enriched replacement pennies ("low-value pennies" or "LVP") to Brink's in return. In denying Defendant's motion to dismiss, the Court held that the facts, as alleged, constitute violations of the False Claims Act ("FCA"), and subject Defendant to statutory penalties of between $5,500 and $11,000 per false claim. Plaintiff now moves for partial summary judgment on penalties because the undisputed facts in the record reveal that Defendant submitted at least 11,002 false or fraudulent reports to the FRB, that did not disclose the extent of Brinks' transactions with Jackson Metals. Based on the plain language of the FCA and the law of the case, Plaintiff is entitled to partial summary judgment.[3]

Defendant was contractually required to store and safeguard Government property. Instead, Defendant returned to the Government—the applicable FRB—less-valuable property than had been initially deposited, fraudulently depriving the Government of substantial monies. The FCA is triggered when false statements are made in furtherance of depriving the Government of valuable property. In this case, Defendant issued three fraudulent reports each day for more than two years, in furtherance of the illicit scheme with Jackson Metals. These false reports were made with the intention of concealing the illicit scheme from the Government and violating the FCA.

---

[2] See Exhibit 3 for the full text of the Court's Opinion.

[3] Plaintiff does not seek summary judgment on the issue of compensatory damages, as he acknowledges that the computation of such damages remains subject to dispute.

4

II.  **STATEMENT OF PROCEDURAL HISTORY & STATEMENT OF FACTS**[4]

A. **General Factual Overview**

Defendant and Jackson Metals entered into a secret agreement that allowed Jackson Metals to obtain and "mine" the "brass" in HVP, typically picking up loose unsorted pennies from Brink's, removing the "brass" pennies (which contained 95% copper) and returning all "zinc" LVP (which contained 2.5% copper)[5] to Brink's. Exhibit 1, Declaration of David S. Stone ("Stone Dec."), Exhibit A, ¶6. After engaging in these fraudulent transactions, Defendant filed constant false reports with the Government, omitting this scheme each and every time. For each of those false reports, the Government is entitled to penalties of between $5,500 and $11,000. In total, at least 11,002 reports were filed with the Government—requiring statutory penalties of between $60,511,000 and $121,022,000. These penalties are separate and apart from the compensatory damages available under the FCA.

B. **Facts Underlying Defendant's Fraudulent Scheme**

The majority of the relevant facts are undisputed, and the parties have stipulated to many of the other facts described below. *See* Stipulated Facts, Stone Dec. Exhibit A, ¶1. This Court extensively described those facts at pages 1 through 9 of its January 15 Opinion denying Defendant's motion to dismiss, which Plaintiff hereby incorporates and relies on.

The facts demonstrate that federally-deposited coin ("Fed-coin") was commingled with coin deposited by other entities, and Defendant made no attempt to maintain the exact coin deposited, despite Defendant's contractual obligations to the contrary. Stipulation of Facts at ¶2.

---

[4] Despite the otherwise separate nature of these sections, for purposes of brevity and clarity, these sections have been combined.

[5] Brink's stipulated that "Pennies minted prior to mid-1982 were typically composed of 95% copper and 5% zinc. Pennies minted after mid-1982 are generally composed of 97.5% zinc and 2.5% copper." Stipulated Facts, ¶6, Exhibit A to Declaration of David S. Stone, hereinafter, "Stone Dec."

5

By commingling these coins,[6] Brink's improperly treated each penny as interchangeable, when in fact they were not, as established by Brinks' very conduct in this case and this Court's prior findings.[7] Defendant sold or swapped HVP for LVP with Jackson Metals, establishing that the coins in Defendant's storage facilities were unequal in value.[8] As the Court previously recognized, per Defendant's obligations under the Coin Terminal Agreements ("CTAs") "Brink's was under a specific, contractual obligation to return to the FRB pennies with the same metallurgical content as the pennies entrusted to it[.]" January 15 Opinion at 35. "When read as a whole, the terms of the CTAs presuppose that the same coins entrusted to the FRB . . . would be returned to it or a consignee." *Id.* at 19. As the Court properly explained, "[s]uch a presupposition obviated any need for the CTAs to have distinguished between pennies with a

---

[6] It is undisputed that Fed-owned pennies at any coin terminal ranges between 10% and 42%. Stipulated Facts, ¶4, Stone Dec, Exhibit A. A description of how Brink's stores the commingled bags of loose pennies in its Cincinnati coin terminal (stacks of skids containing bags of loose coin) appears in the Burzynski Declaration at ¶¶ 2 to 13 and Exhibits A through F.

[7] As This court held:
> [T]he pennies Brink's and Jackson Metals allegedly swapped were not used as legal tender, but instead were traded and converted based on their intrinsic or tangible metallurgical value." (January 15 Opinion at 20).
>
> . . . .
>
> [B]ecause the transactions at issue here involved the conversion and sale of pennies based on their intrinsic, rather than representative values, this Court finds that the allegedly swapped and replaced pennies should be valued based on their intrinsic, rather than representative value, for the purpose of determining whether Brink's returned less property to the FRB or its consignees than entrusted to it. (January 15 Opinion at 21).

[8] In December 2007, Brink's coin sorting machines were modified to separate high-value copper pennies from zinc pennies, resulting in Brink's "improving" to 100% the number of high-copper-content pennies transferred to Jackson Metals. James Mulroney, a 30-year veteran of Brink's, and Brinks' U.S. Director of Coin Operations, testified in his Rule 30(b)(6) deposition that instead of being sold a mix of high- and low-copper pennies as was the norm before 2007, from December 2007 forward, Jackson Metals was sold "just the copper pennies in most cases." Mulroney Deposition (Volume II), T41-17 to 42-18. Stone Dec, Exhibit M. These actions and this admission further proves that the value of pennies was not equal.

6

lesser or higher copper content; under the terms of the CTAs, under no circumstances should FRB's pennies have been sorted based on their metallurgical content and reconstituted in their metallurgical content in any way." *Id.* at 19.

Furthermore, the CTAs required Defendant to gain consent from the FRB before moving Fed-coin. Never, did Defendant get consent from the FRB to move Fed-coin to Jackson Metals, in clear violation of the CTAs and in furtherance of the fraudulent scheme. As the Court explained:

> Under the CTA, Brink's agreed to "handle bank owned coin only for the purpose of, and in accordance with the requirements set forth in this agreement," and "acknowledges that title to Bank-owned coin shall at all times remain with the Bank and Brink's shall have no right, title or interest therein." (CTA, Doc. 26-4 at ¶ 1). Further, Brink's agreed to store Bank-owned coin in a secure storage area, and only to move coin in accordance with the CTA. While the CTA acknowledges that there may be situations in which it would be convenient for Brink's to deliver coin to or receive coin from a competing armored carrier or to a non-customer bank, Brink's is permitted to move coin only with the consent of the Bank, and if Brink's reports such transfers the same day to the Bank. Further, the only time in which the CTA permits Brink's, Inc. to "remove bags of coin from the Bank's designated storage area" is for the purpose of "opening the bags and wrapping the coin for pending delivery to a Mutual Customer...," Id. at ¶ 9. When these provisions are taken together, the CTA unambiguously requires that Brink's return to the FRB pennies which have not been sorted based on their metallurgical content, because the CTA demands that the pennies are transferred only for transportation reasons, and that aside from wrapping coins, they are to remain untouched.

[*Id.* at 35-36 (emphasis added).]

Based on the CTA, Defendant's obligations are clear: "this Court finds that under the CTA, Defendant Brink's was contractually obligated to return pennies of the same average metallurgical content as the pennies initially entrusted to it." (*Id.* at 35-36). This Court has already defined Defendant's contractual obligations. Discovery proves that Defendant failed to

7

comply. By illegally swapping out the comingled HVP with LVP for a profit, Defendant defrauded the Government.

### C. Duration and Scope of the Fraudulent Scheme

Jackson Metals' Quickbooks records, which Defendant attached and adopted in answers to interrogatories, show approximately 225 purchases. Stipulated Facts, ¶5, Stone Dec., Exhibit A. There were also numerous transactions in a separate Jackson Metals Quickbooks ledger described as "sales." Stone Dec., Exhibits D and E. Many of these so-called "sales" correlate to a "purchase" on the other ledger, and therefore reflect a "swap," which this Court discussed in its January 15 Opinion. January 15 Opinion at 21, 27 through 28. Review of these transactions shows that Jackson Metals purchased pennies from various Brink's facilities between June 22, 2006 and October 14, 2008, including purchases from 16 separate Fed-coin terminals ("FCT").[9]

Each of Defendant's FCT was required to generate and file daily reports with its regional Federal Reserve Bank. Brink's produced at least three daily reports describing the quantity of Fed-owned pennies at any particular coin terminal—Coin Inventory Reports,[10] Coin Detail Reports,[11] and a report entitled Customer Inventory Totals.[12] *See, e.g.*, Exhibit 2, Declaration of

---

[9] Brink's acknowledges that 14 of these facilities were Fed-coin terminals during the relevant period. Compare the Quickbooks ledger to Brink's supplemental answer to Holbrook Interrogatory No. 2 Stone Cert., Exhibit C. The documents produced show two Fed coin terminals – Boston (Stone Dec., Exhibit K) and Brooklyn, NY (Stone Dec., Exhibit J.).
[10] The Coin Inventory Report included a page for "Federal Reserve Bk", which listed each type of coin (including pennies) for the "Prior Month," "Prior Day," "Today," and "Balance." These inventory reports fail to accurately reflect the metallurgical content of Fed-owned pennies.
[11] The Coin Detail Report included a page for "Federal Reserve Bk", which listed each type of coin (including pennies) for the "Receipts," "Shipments," "Other," and "Balance." While the Coin Detail Report does not reflect inventory, the "Shipments" column of this report inaccurately reflects that Fed pennies shipped from the coin terminal did not "have the same metallurgical content as the pennies entrusted to it" and therefore, each applicable Coin Detail Report constituted a false record or statement under the FCA.
[12] Customer Inventory Totals included a line item for Fed pennies and for each of the other coins. The FRB is one of several Brink's customers included in the Customer Inventory Totals.

8

Irwin P. Burzynski ("Burzynski Dec."), Exhibits G through I. None of these reports, or the receipts or ledgers generated by Brink's, mention Jackson Metals, let alone divulge the secret transactions. Clearly, Brink's was keeping this information hidden from the Government.

Brink's acknowledges that the CTAs which this Court construed in its January 15 Opinion governed the Brink's Cleveland Fed-coin terminal at which Holbrook worked. *See* Stipulated Facts at ¶1; Stone Dec., Exhibit A. All of the CTA's provided by Brink's, which appear to apply during the relevant time frame, contain substantially identical language about how Brink's was to handle the coin; none of which provided Brink's with authority to act as it did here.

Based on the discovery provided, it becomes clear that Brink's filed at least 11,002 false reports in connection with transactions involving Brink's and Jackson Metals, which as will be explained further below, is simply calculated by factoring the number of days per year that Brink's was required to issue reports to the Government, the number of reports it was required to submit per day, and the number of days in which Brink's issued reports failing to disclose its fraudulent activity. The Court previously found that "Brink's alleged omissions of Jackson Metal's transport and exchange of FRB-owned coin in customer Inventory reports and other required documents makes those reports and documents false records within the meaning of §3729(a)(7)." January 15 Opinion at 34. Therefore, Plaintiff is entitled to summary judgment on penalties in an amount which this Court deems appropriate. Alternatively, if the Court does not determine the amount of penalties, it should order partial summary judgment as to Brinks' liability for filing false reports under pre-FERA FCA, 31 U.S.C. §3729(a)(7).

### D. The Court's January 15, 2015 Opinion and Order Denying Brinks' Motion to Dismiss

In denying most of Defendant's motion to dismiss, this Court made certain holdings regarding the validity of Plaintiff's allegations, both with respect to penalties and the existence of violations under the FCA. This decision remains the law of the case, and should guide the Court's analysis in deciding the pending summary judgment motions. Further, this Court should reject any attempt by Defendant to re-litigate what has already been properly decided.

In sum, this Court stated that if the facts were as alleged, those facts would constitute violations of the FCA and subject Brink's to penalties of between $5,500 and $11,000 per false claim. Plaintiff now moves for partial summary judgement on penalties because the undisputed facts in the record reveal that Brink's submitted at least 11,002 reports to the government that were false or fraudulent because they did not disclose the extent of Brinks' transactions with Jackson Metals. Based upon the plain language of the FCA and previous decision of this Court, Plaintiff respectfully requests the Court enter partial summary judgment in his favor.

### III. ARGUMENT

### A. Plaintiff is Entitled to Summary Judgment

Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact," entitling the movant "to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once "the movant has met its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party then must set forth specific facts showing that there is a genuine issue for trial." *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (citations omitted). However, the "respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must present affirmative evidence in order to defeat a

10

properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted).

Moreover, once an issue has been determined by the court, it becomes the law of the case. *Brady-Morris v. Schilling*, 303 F.3d 671, 676 (6th Cir. 2002) ("Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case."). This doctrine:

> merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions….To differ, we must find some cogent reason to show the prior ruling is no longer applicable, such as if our prior opinion was a clearly erroneous decision which would work a manifest injustice.
>
> [*Id.* at 677-78 (citations omitted).]

Plaintiff respectfully submits that under the undisputed facts, supported by the law of the case as established by this Court's January 15 Opinion, Plaintiff has met his burden for partial summary judgment as to liability and penalties.

## B. Defendant Admitted to Stealing Government Property

Defendant admitted to swapping HVP for LVP, thereby violating the FCA. Although the Government did not differentiate between HVP and LVP when it delivered the coins to Defendant, the Court found the CTAs required the exact same percentage of HVP that had been deposited be returned upon withdrawal. January 15 Opinion at 27. Yet, on multiple occasions over a two-year period, Defendant systematically removed and sold HVP and replaced them with LVP, while intentionally keeping this scheme hidden from the Government.

The undisputed facts demonstrate that Defendant purposefully comingled Fed-coin with other pennies in general circulation, making no attempt to differentiate between the two. Stone

11

Dec., Exhibit A. This Court's January 15 Opinion and the facts support Plaintiff's argument: there is a fundamental, valuable difference between HVP and LVP because of their copper content. Defendant's actions support this conclusion as well—hence their motivation to siphon out HVP and replace them with LVP for profit. The end result of Defendant's scheme is that Defendant made substantial profit by depriving the Government of valuable property and concealed these actions by filing fraudulent reports with the Government.

In response, Defendant splits hairs by claiming it was not required to determine which coins were Fed-coin until the coins were redistributed to the Government. In essence, despite instituting a scheme to exchange HVP for LVP, Defendant attempts to argue that HVP and LVP are interchangeable, which would allow them to be substituted without concern. This argument is fundamentally flawed, both legally and factually, and runs afoul of the Court's prior findings.

The importance of the different metallurgical content between HVP and LVP is clear, as Defendant and Jackson Metals' entire scheme revolved around secretly extracting HVP from the Fed-coin. By commingling the Fed-coin with pennies in general circulation, and then mining the pile for HVP, Defendant breached the CTAs and returned property of lesser value to the Government.

### C. Defendant Is Subject to FCA Penalties for Violating the CTAs, Filing False Reports, and Depriving the Government of Valuable Property

Defendant failed to disclose its transactions with Jackson Metals[13] in its reports to the regional FRB. As this Court observed, every time Defendant noted its Fed-coin inventory, that description was false. January 15 Opinion at 34. Every time Defendant filed a report, they falsely

---

[13] Defendant claims that it notified the Government of its actions during 2007 lobbying efforts before the U.S. Mint and Congress to lift the ban on coin melting. However, the documents Defendant relies upon never mention, let alone explain, their secret agreement with Jackson Metals. If anything, Defendant misled Congress by concealing the extent of its ongoing relationship with Jackson Metals.

12

reported the inventory of Fed-coin, since Defendant was obligated to include the exact same proportion of HVP and LVP as they were given. *Id.* at 35.[14]

Despite its clear obligations, Defendant's own records show that 16 different Fed-coin terminals handled Jackson Metals coin purchases. For each coin terminal, beginning on the date that Jackson Metals first purchased coins stored at the terminal, and from that day forward, until the end of the relevant time period, Defendant materially omitted the value of the Fed-coin on its daily reports. Every Fed-coin terminal generated and filed at least three daily reports with its regional FRB describing the quantity of Fed-coin at a particular coin terminal: (1) a Coin Inventory Report;[15] (2) a Coin Detail Report;[16] and (3) a report entitled Customer Inventory Totals.[17]

Despite these precise reporting requirements, Defendant never disclosed their secret agreement to sell HVP and replace them with LVP. In light of its breach of the CTAs, which require Defendant to accurately reflect the metallurgical content of Fed-coin, every statement regarding the inventory of Fed-coin is false. Accordingly, the appropriate measure for

---

[14] Moreover, the CTAs which Defendant produced and stipulated to, require that each coin terminal employ the practice of "first in, first out" ("FIFO") inventory control for its coin inventory. Stipulated Facts, ¶1, Stone Declaration, Exhibit A Defendant's exploitations of FIFO with Jackson Metals is another example of an FCA violation in furtherance of its scheme to steal HVP.

[15] The Coin Inventory Report included a page for "Federal Reserve Bk", which listed each type of coin (including pennies) for the "Prior Month", "Prior Day", "Today" and "Balance". These inventory reports fail to accurately reflect the metallurgical content of Fed-owned pennies.

[16] The Coin Detail Report included a page for "Federal Reserve Bk", which listed each type of coin (including pennies) for the "Receipts", "Shipments", "Other" and "Balance". While the Coin Detail Report doesn't reflect inventory, the "Shipments" column of this report inaccurately reflects that Fed pennies shipped from the coin terminal did not "have the same metallurgical content as the pennies entrusted to it" and therefore, each applicable Coin Detail Report constituted a false record or statement under the FCA.

[17] Customer Inventory Totals included a line item for Fed Reserve Bank pennies and for each of the other coins. The Fed is one of several customers included in the Customer Inventory Totals.

13

determining penalties should be a minimum of three penalties per day for each of Defendant's Fed-coin terminals which handled Jackson Metals' transactions.

Penalties are readily calculated, as the time period begins on the first day when Defendant engaged in fraudulently siphoning HVP for LVP and continued to the last date of Jackson Metals' purchase from each Fed-coin terminal.[18] With those parameters established, the calculation for determining penalties becomes clear. The CTAs required Defendant to file reports on Mondays through Fridays, with the exception of Federal holidays. The resulting penalties calculation is reached by multiplying the amount of days between Jackson Metal's first and last purchase from each of Defendant's Fed-coin terminal, by three reports per day. For purposes of assessing penalties for filing false records or statements under the FCA, a total of 11,002 false reports were filed by Defendant with the FRB. Stone Dec., Exhibit F.

Under the FCA, Defendant is assessed a minimum penalty of $5,500 for each false report, resulting in a minimum total penalty of $60,511,000. Pursuant to the FCA maximum penalty of $11,000 per false report, Defendant is liable for up to $121,022,000 in penalties alone. This analysis does not cover all of Plaintiff's claims for damages, but is limited to calculating the penalties for the undisputed facts described above, whereas damages must ultimately be determined at trial. In the meantime, Plaintiff is entitled to partial summary judgment as to Defendant's liability for penalties under the FCA for filing 11,002 false statements.

---

[18] The "end dates" are for purposes of this motion, only, as the trier of fact could find that the effects of Defendant's transactions could persist beyond the date of the last transaction at each terminal, thus conclude that a larger number of reports were false, increasing the amount of the penalties beyond what this motion seeks. For example, Holbrook, at depositions, testified that coin turnover usually took one year at the Brink's Cleveland coin terminal in 2006-2007. Stone Dec., Exhibit B.

14

### D. This Court Has Already Found that the Factual Allegations, If Undisputed, Fraudulently Deprived the Government of Valuable Resources

This Court has already held that Defendant enacted this scheme in violation of the CTAs and deprived the Government of valuable resources. Defendant cannot dispute the law of the case, wherein this Court found that "Brink's returned to the FRB pennies with less intrinsic value than entrusted to it. Further, Brink's profited from trading pennies with higher intrinsic value, to which FRB had title and exclusive right, as the CTA makes clear." January 15 Opinion at 21-22. The record shows that every Jackson Metals transaction left Defendant with fewer HVP than before. Similarly, Defendant returned to the Government fewer HVP than it had entrusted to them.

These facts lead to the inescapable conclusion—which this Court has already articulated—that "Defendants...violated the FCA not because Jackson Metals may have melted brass pennies, but because Defendants...returned to the FRB fewer [HVP] than entrusted to them, due to swapping pennies with Jackson Metals." *Id.* at 29. Finally, this Court has found that "Brink's alleged omissions of Jackson Metal's transport and exchange of FRB-owned coin in Customer Inventory Reports and other required documents makes those reports and documents false records within the meaning of §3729(a)(7)." *Id.* at 34.

### IV. CONCLUSION

For all the reasons explained above, Plaintiff respectfully requests that this court grant his motion for partial summary judgment against Defendant for penalties in sum of $5,000 to $10,000 each for filing a total of 11,002 false reports under the False Claims Act (31 U.S.C. §3729(a)(7)). In the alternative, this court should enter judgment for Plaintiff as to Defendant's liability, only, for penalties for filing false reports under the pre-FERA False Claims Act (31

15

U.S.C. §3729(a)(7)).

Dated: October 10. 2017

            Respectfully submitted,

            THE CHANDRA LAW FIRM, LLC

            /s/ *Donald Screen*
            Subodh Chandra (OH Bar No. 0069233)
            Donald Screen (OH Bar No. 0044070)
            1265 W. 6th St., Suite 400
            Cleveland, OH 44113-1326
            Phone: 216.578.1700  Fx: 216.578.1800
            Subodh.Chandra@ChandraLaw.com
            Donald.Screen@ChandraLaw.com

            STONE & MAGNANINI LLP

            /s/  David S. Stone
            David S. Stone, Esq.
            *admitted pro hac vice*
            100 Connell Drive, Suite 2200
            Berkeley Heights, New Jersey 07922
            973-218-1111
            973-218-1106 fax
            DStone@stonemagnalaw.com

            *Attorneys for Plaintiff Brian D. Holbrook*

### CERTIFICATE OF SERVICE

I certify that on October 10, 2017, my office served, via the Court's ECF system, the foregoing document on all counsel of record in this case.

/s/ *Donald Screen*
*Attorneys for Relator Brian D. Holbrook*

16